**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLYDE MCGRIFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:12-cv-00063 |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| MATTHEW MARKS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

This is a § 1983 case in which Plaintiff Clyde McGriff alleges that Defendant Pittsburgh Police Detective Matthew Marks falsely arrested/imprisoned and maliciously prosecuted him for burglary and receipt of stolen property. The heart of the parties' dispute is whether there was probable cause for Mr. McGriff's arrest, and in particular whether Defendant Marks misrepresented and omitted certain material facts in his state court Probable Cause Affidavit that preceded the issuance of a warrant for Mr. McGriff's arrest.

Pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 10 ("Motion"), whereby Defendant seeks judgment in his favor as to all of Mr. McGriff's claims. The Court has carefully considered Defendant's Motion; Defendant's Brief in Support, ECF No. 11; Defendant's Concise Statement of Material Facts, ECF No. 12; Plaintiff's Response/Brief in Opposition, ECF No. 25; Plaintiff's Responsive Concise Statement of Material Facts, ECF No. 26; Defendant's Reply, ECF No. 28; and Defendant's Reply to Plaintiff's Additional Material Facts, ECF No. 29. For the reasons that follow, Defendant's Motion is granted with respect to

Plaintiff's federal law claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## I.    BACKGROUND

### A.  The Robbery and Preliminary Investigation

The facts of this case are dense. On December 6, 2009, Officer Michael Waltenbaugh of the City of Pittsburgh Bureau of Police was dispatched to investigate a reported burglary at 5217 Kincaid Street in Pittsburgh, Pennsylvania. *See* Investigative Report dated Dec. 6, 2009 ("12/6 Report"), ECF No. 11-3; Def.'s Concise Stmt. Mat. Facts ¶ 1, ECF No. 12.  Officer Waltenbaugh spoke with the victim Zachary Wooldridge, who related that the house he owned, which was vacant because he was renovating it, had been burglarized.  12/6 Report.  Wooldridge stated that he left the house around 11:00 a.m. that day and returned at approximately 6:00 p.m. that day, and discovered that the back door had been kicked in and a number of his tools and supplies he had inside the house were gone. *Id.* Wooldridge provided Officer Waltenbaugh with a list of the items he was missing, which included a number of tools and various supplies, together valued at approximately $2,960. *Id.*   The supplies included boxes of electric outlets, a box of light switches, and assorted fuses and circuit breakers. *Id.*  Waltenbaugh then spoke with a neighbor, Fannie Blackman, who stated that at 11:30 a.m. she saw an unknown black male going in and out of the house loading tools into a white pickup truck. *Id.* Ms. Blackman said that she assumed the man was a friend of Wooldridge, because he had a lot of friends who would come and help him work on the house. *Id.* She described the man she saw as a "black male 5'5 150lbs in his 30's clean shaven," and wearing "Jacket Brown – Hooded sweat shirt with zipper: : Jeans Blue." *Id.* Officer Waltenbaugh recorded all this information in the 12/6 Report.

On December 8, 2009, an Officer Lee Dewberry filled out another report in the case. Supplemental Report dated Dec. 8, 2009, ECF No. 11-5 ("12/8 Dewberry Report"). The report stated that Wooldridge "states Lisa Payne who is the manager at Home Depot in East Liberty, informed him a black male entered the location during the time frame of his burglary, with all the items victim listed stolen from residence. The transaction was recorded on the surveillance video." *Id.*

Sometime on that same date, the case was assigned to Defendant Detective Matthew Marks. ECF No. 12 ¶ 7; Supplemental Report dated Dec. 8, 2009, ECF No. 11-6 ("12/8 Marks Report"). Marks contacted Wooldridge and spoke with him regarding the missing items. ECF No. 11-6. Wooldridge described further the items that were missing, stating that while he had old tools, all of the supplies that were missing were brand new and still in the original wrapping, except for one 36" x 72" window blind that was opened because he had tried installing it but it was the wrong size. Supplemental Report dated Dec. 10, 2009, ECF No. 11-7 ("12/10 Report"). Wooldridge relayed that he spoke with Melissa DePiero, an Asset Protection Specialist at Home Depot, who confirmed with him that the East Liberty Home Depot store "had a return with the exact list of items he provided her including the 36x72 blind that was open." *Id.* Marks also personally contacted DePiero, who confirmed with him that Wooodridge's list of stolen items "was an exact match" of items returned in the East Liberty Store at 1:53 p.m. on December 6, just two hours after the alleged burglary. *Id.* She informed Marks that the store requires photo identifications for returns, and provided the driver's license number of the man who returned the goods at 1:53 p.m. *Id.* She also provided Marks with a surveillance video of the return, as well as a copy of the return. *Id.*

Marks then ran the driver's license information, which corresponded to Plaintiff Clyde McGriff, Jr. It appears that from the driver's license information, Marks learned that Mr. McGriff was an African-American male, six feet tall, weighing over 200 pounds, approximately fifty-one (51) years old, with facial hair. Ans. ¶ 17, ECF No. 5. Marks also viewed the store surveillance video, and saw that it matched this description. ECF No. 11-7. According to Marks, the man on the video also matched the description provided by Ms. Blackman.[1] *Id.* (Additionally, at some point between December 8 and December 10, Marks himself spoke with Ms. Blackman, who confirmed her prior statements.).[2]

### B. Warrant Application and Arrest

With this information in hand, on December 10, 2009, Marks filed a Police Criminal Complaint, charging Plaintiff with one count of Burglary, 18 Pa. Cons. Stat. § 3502, and one count of Receiving Stolen Property, 18 Pa. Cons. Stat. § 3925. *See* ECF No. 11-8. The Affidavit of Probable Cause ("Affidavit") that accompanied in Marks's Complaint contains the same information as the 12/10 Report verbatim. While the contents of the Affidavit are provided in their entirety and discussed below, Marks relayed the major facts of his investigation as they appear above, with certain exceptions. Most importantly, the Affidavit left out eyewitness Blackman's description of the physical characteristics of the man she saw (height, weight, age, and facial hair), and the fact that that description differed from Mr. McGriff's characteristics in a number of respects. *See id*. The State Magisterial District Judge signed the Criminal Complaint

---

[1] While the Court does not have record evidence as to what Mr. McGriff was wearing in the video, it appears from the filings that the parties agree he was wearing a brown jacket or sweatshirt at that time.

[2] There is also record evidence of a written message for Defendant Marks that relayed telephone call from Ms. Blackman, in which she described the suspect as being 5'6", 150lbs, brown skin, wearing a brown hat, and with a white truck in new or good condition. ECF No. 5-4.

on that date, and issued a warrant for Mr. McGriff's arrest. It appears that Mr. McGriff was arrested either on that same date or on December 11, 2009. *See* ECF Nos. 11-9; 11-17; 11-21.

### C. Proceedings After Arrest

It appears that at the time of his arrest, Mr. McGriff was already on parole for a prior burglary. *See* ECF No. 11-9. The record is unclear as to what transpired next, but it appears that around December 10 or 11, 2009, Mr. McGriff also provided a urine sample that tested positive for cocaine. *See* ECF Nos. 11-17; 11-21. It is unclear exactly what the outcome of this positive testing was or its bearing on the burglary and receipt of stolen property charges. However, it seems that on January 4, 2010, Mr. McGriff was again arrested for those burglary and receipt of stolen property charges, was detained, and bail was set. *See* ECF Nos. 11-14; 11-15; 12 ¶ 17; 26 ¶ 17. Also, on December 15, 2009, Marks and a Parole Agent completed a Confiscation and Disposal Report, detailing that they found and confiscated a number of hand and power tools located in Mr. McGriff's truck. ECF Nos. 11-12; 12 ¶ 15; 26 ¶ 15.

A preliminary hearing was held on March 25, 2010, where Mr. McGriff was represented by counsel, and at which Wooldridge and Marks testified before Pittsburgh Municipal Court Judge Randy C. Martini regarding the government's evidence of the charges against Mr. McGriff. ECF Nos. 11-22, 12 ¶ 18, 26 ¶ 18. Upon hearing the testimony, Judge Martini ruled that "[i]t is a very, very small bit of evidence, but [the case] will be held for trial." ECF No. 11-22 at 15:1-2. Following a number of preliminary proceedings and continuances of trial, the Government entered a petition of *nolle prosequi* on November 11, 2010, and both charges against Mr. McGriff were dropped. ECF Nos. 11-15; 11-16.

### D.  Procedural History

Mr. McGriff filed this suit *pro se* in the Court of Common Pleas of Allegheny County on December 8, 2011, which Defendant removed to this Court. *See* ECF No. 1.  The Complaint sets out five counts: Count I, Unlawful Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983; Count II, Malicious Prosecution under 42 U.S.C. § 1983; Count III, False Arrest/False Imprisonment; Count IV, Malicious Prosecution; Count V, Outrageous Conduct.  While Counts III-V do not state the legal source of those claims, they can be fairly read to assert state common law tort claims, especially given that the Court has the "obligation to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), which are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520 (1972).  Plaintiff admits that he was the man who returned the Home Depot goods and was the man in the surveillance video, but asserts that those items "belonged exclusively to" himself, and maintains that he was wrongfully arrested and prosecuted.  Compl. ¶ 4, ECF No. 1-2.

### II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001).  "When there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting

versions of the parties." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (internal quotation and marks omitted).

## III.   SECTION 1983 CLAIMS

### A.  Malicious Prosecution and False Arrest

Section 1983 provides a vehicle to assert claims for violation of an individual's federal constitutional rights. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).   When analyzing a § 1983 claim, the court's initial inquiry must focus on two essential elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *see also Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005).   Defendant Marks, a police detective, does not dispute that he was acting under the color of law in this case. Therefore, the Court need only consider the second requirement of § 1983 – whether a constitutional violation has been asserted.

Whether a constitutional violation is claimed to have occurred is also a prerequisite for a § 1983 defendant's assertion of qualified immunity. In general, the doctrine of qualified immunity shields government officials from defending a claim of civil liability when they perform discretionary functions.   *Wilson v. Layne*, 526 U.S. 603, 609 (1999).   A government official, such as a police officer, will be entitled to qualified immunity from suit unless (1) the officer's conduct violated a constitutional right possessed by the plaintiff and (2) the right was "clearly established" at the time of the officer's allegedly unconstitutional conduct.   *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).   These two steps need not be applied in sequence,

and a trial court may exercise its discretion to craft the most effective sequential analysis given the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236, 242 (2009).

Claims for false arrest and false imprisonment under § 1983 originate from the Fourth Amendment guarantee against unreasonable seizures. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636.

To prove malicious prosecution under the Fourth Amendment via § 1983, a plaintiff must show that: "(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (*en banc*).

Therefore, claims of both false arrest and malicious prosecution require that the plaintiff was arrested without probable cause. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Importantly, when a plaintiff is arrested on multiple charges, the presence of probable cause as to any one charge will defeat a false arrest claim as to all charges. *See id.* However, as this Court has recently explained, the Third Circuit "has wavered as to whether the same rule applies for a malicious prosecution claim." *Posey v. Swissvale Borough*, 2:12-CV-955, 2013 WL 989953, at *9 (W.D. Pa. Mar. 13, 2013). This Court considered the tension between the Third Circuit's pronouncements in *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005), *Johnson*, 477 F.3d at 82, and *Kossler*, 564 F.3d at 194 n.8 with regard to that question, and held that especially

where the doctrine of qualified immunity applies, the prevailing rule in this Circuit is that "if probable cause is present as to any one count, a [criminal] defendant charged on multiple counts cannot state a § 1983 claim for malicious prosecution," as held in the *Wright* case. *Posey*, 2013 WL 989953, at *10 (collecting cases). Because Mr. McGriff was charged on two counts, burglary and receipt of stolen property, if there was probable cause to believe that he committed *either* of those crimes, his constitutional claims for false arrest and malicious prosecution must be dismissed.

"Probable cause requires more than mere suspicion. However, it does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (internal marks and quotes omitted).

> Probable cause exists if there is a fair probability that the person committed the crime at issue. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.

*Wilson v. Russo*, 212 F.3d 781, 789–90 (3d Cir. 2000) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (internal marks and citations omitted). "Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright*, 409 F.3d at 602.

> Although, generally, "the question of probable cause in a section 1983 damage suit is one for the jury," *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998), a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

*Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). In other words, the Court's task is to determine whether "a reasonable jury could conclude that at the time the arrest was made, the

facts and circumstances within [the officer's] knowledge were . . . sufficient for a prudent police officer to believe that Plaintiff committed the offenses charged." *O'Hara v. Hanley*, CIV.A. 08-1393, 2011 WL 915776, at *7 (W.D. Pa. Mar. 15, 2011).

## B. Arrest Warrant and Probable Cause

Mr. McGriff was arrested pursuant to an arrest warrant, for which Marks filled out an Affidavit of Probable Cause ("Affidavit"). "[A]n arrest warrant itself issued by a magistrate judge does not, in itself, shelter an officer from liability for false arrest." *Wilson*, 212 F.3d at 786-87. In the seminal *Wilson* case, the Third Circuit laid out the analytical framework for considering a claim for a false arrest made pursuant to a warrant: the plaintiff must show, "by a preponderance of the evidence: (1) that a police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* at 786-87. In making the materiality determination, a court must perform "reconstructive surgery" on the original affidavit by first "excis[ing] offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789. The purpose of undertaking this two-part exercise is to ensure that a police officer does not "make unilateral decisions about the materiality of information, or after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." *Id.* at 787. More recently, the Third Circuit in *Reedy v. Evanson*, 615 F.3d 197, 214 n.24, 215-16 (3d Cir. 2010) reaffirmed the analysis in *Wilson* and further cautioned that in performing the analysis, district

courts must keep in mind the proper summary judgment standard of review and consider the record in the light most favorable to the nonmoving party (here, the Plaintiff).[3]

### 1. The Original Affidavit

The Original Affidavit stated the following:

> Date when Affiant received information: 12-06-2009 . . .
>
> On 12/06/2009, Zack Wooldridge and Nico Gomez report that on 12/06/2009 @1100 hours they left Wooldridge's residential residence 5217 Kincaid St Pah. Pa. They stated that they are currently renovating the property and had left for a few hours and then returned at 1800 hours to find the rear door had been kicked in.
>
> Zack Wooldridge and Nico Gomez stated that alter looking around they noticed approximately 2,960.00 dollars worth of Wooldridge and Gomez home remodeling tools including hand tools and power tools stolen along with a few hundred dollars worth of Home Depot remodeling supplies. Zack Woodridge stated that most of the supplies taken ware brand new still in the original wrapping except for one 36x72 blind that was opened because he had tried installing it but it was the wrong size. He stated that most of the items were in a brown box on the kitchen table. Zack Wooldridge also stated that he contacted the The [sic] Home Depot store and spoke with Melissa Depiero. He stated that she confirmed that the East liberty store had a return with the exact list of items he provided her including the 36x72 blind that was open.
>
> I Detective Marks contacted Wooldridge's neighbor Fannie Blackman who lives at 5206 Kincaid stated [sic] that at 1130 hours she saw a unknown [sic] black male with a brown sweater jacket on and blue jeans going into and out of the house loading tools into a white pick up truck. Blackman said that she thought it was a Mend of Wooldridge because he has a lot of people coming in and out helping him wok on the house.
>
> I then contacted The Home Depot store and spoke with Melissa Depiero, Asset protection Specialist She stated that she spoke with WooWridge and he provided her a list if [sic] items he reported stolen. She then stated that his list was almost an exact match of items returned on 12/06/2009 @ 13:53hrs. She provided a copy of the return along with a video surveillance disc of the transaction. Depiero states that when a return is made a photo identification is required and the identification provided for this return was a Pa. Drivers license # 18899452.

---

[3] Moreover, the court in *Reedy* explained that the probable cause analysis outlined in *Wilson* with regard to a false arrest claim is equally applicable to a malicious prosecution claim. *Reedy*, 615 F.3d at 211 n.22.

I Detective Marks checked the Pa. Drivers license # 18898452 through the Pa. state JNet system and confirmed this person as CLYDE McGRIFF Jr, DOB 10-08-1958.

Detective Grill and I then viewed the surveillance disc of the transaction and confirmed that the description provided by Wooldridge's neighbor Fannie Blackman matched the description of the Home Depot return and also CLYDE McGRIFF Jr. DOB: 10-08-1958.

Zack Wooldridge and Nico Gomez both report they don't know CLYDE McGRIFF Jr. DOB: 10-08-1958 and never gave him permission to enter 5217 Kincaid St. Pgh. Pa. at any time or take anything from inside it.

ECF No. 11-8.

## 2. False Statements

At this step, the Court must determine whether the original Affidavit contains recklessly false statements or omissions. The standards for false assertions and omissions are slightly different:

> Assertions are made with reckless disregard when, "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." [*Wilson*, 212 F.3d] at 788 (internal quotations omitted). Assertions can be made with reckless disregard for the truth "even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Id.* "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" in making a probable cause determination. *Id.* at 783.

*Reedy v. Evanson*, 615 F.3d at 213. Whether a fact has been recklessly misrepresented or omitted is *not* to be considered through the "summary judgment lens of 'all inferences in favor of the non-moving party,'" but rather must be considered "with scrupulous neutrality." *Id.* at 214 n.24.

Mr. McGriff asserts that Marks made the following misstatements in his Affidavit: (1) Marks "asserted that he contacted Blackman before contacting the Home Depot and speaking

with Melissa Depiero," when in reality, "Marks never contacted Blackman," ECF No. 25 at 3, 6; (2) Marks "had reason to doubt the accuracy of . . . the clothing description" provided by Ms. Blackman, *id.*; (3) Marks stated that the man in the surveillance video "confirmed that the description provided by Fanny Blackman matched the description of Clyde McGriff Junior, when actually Blackman never provided a clothing description of the unknown black male she saw," *id.* at 4 (internal marks omitted); (4) Marks stated that he received information from Blackman on December 6, 2009, when he actually did not receive it until December 8, *id.* at 6; (5) Marks stated that Melissa DePiero stated that she spoke with Wooldridge regarding the stolen items, when allegedly Wooldridge actually only spoke with Lisa Payne, ECF No. 12-2 ¶ 24; and (6) Marks stated that Blackman provided a clothing description of the suspect, when allegedly she actually never provided any, ECF No. 12-2 ¶ 26.

The Court's review of the challenged statements reveals that statements 1, 2, 5, and 6 did not constitute misstatements at all, while statements 3 and 4 were reckless misstatements.

As to statement (1), the Original Affidavit stated that "I detective Marks contacted Wooldridge's neighbor Fannie Blackman . . . . I then contacted the Home Depot store and I spoke with Melissa Depiero." ECF No. 11-8 at 7. Mr. McGriff argues that this statement is inconsistent with Mr. Marks' testimony on March 25, 2010, in which Marks stated on the witness stand that when he was assigned the case, he looked at the list of stolen items and contacted Melissa Depiero, who informed him that the man who had made a return with those same items was Clyde McGriff, and showed him the surveillance video. Mar. 25, 2010 Hr'g Tr. at 8:11-9:24, ECF No. 11-22. When Marks was asked "Did your investigation contain anything else besides that?" Marks responded, "Up until that point, no." *Id.* at 10:5-7.

According to Plaintiff, this seeming inconsistency necessitates the conclusion that Marks lied in the Affidavit, and in fact never spoke with Blackman at all. The Court disagrees. First, the Court would note that record evidence that Mr. Marks spoke with Ms. Blackman appears in the December 10 Police Report, the Affidavit, and Marks's Interrogatories, *see* ECF Nos. 25-3 ¶ 43; 25-5 ¶ 9. Second, Mr. McGriff only points to Marks's seemingly inconsistent statement in the March 25, 2010 hearing as evidence of the falsity of the statement in the Affidavit. However, the question asked by the court, "Did your investigation contain anything else besides that?" and the answer, "Up until that point, no" are ambiguous at the least. If Marks had, as he asserts, contacted Blackman before contacting DePiero only to confirm the statements she had previously made (memorialized in the 12/6 Report), an ordinary detective might not have considered that contact to be an "investigation." Therefore, it could have been truthful for Marks to have spoken to Ms. Blackman, but still state that his investigation did not contain anything else at that time. In sum, this potential inconsistency is not sufficient evidence from which Mr. McGriff can demonstrate or suggest that Marks made a misstatement regarding his contact with Ms. Blackman at all, let alone one with "reckless disregard for the truth," and there is no evidence to demonstrate that Marks "never spoke with Ms. Blackman at all."

Regarding challenged statement (2), Plaintiff reasons that if Marks had doubts as to the accuracy of Ms. Blackman's description of the suspect's physical characteristics such as height and weight, he also "could not have been certain that she did not also misperceive the clothing description," "especially when considering that one shade of brown to a person may appear to be a different shade of brown to another." ECF No. 25 at 3. Mr. McGriff provides as the evidence that he "was not wearing any shade of brown" at the time of the burglary his own statement saying just that. In the Court's view, as is further explained below, Marks should not have

14

omitted the fact of Ms. Blackman's description of the suspect's height and weight, and how it compared to Mr. McGriff's. However, it does not follow that Mr. Marks "would have known [Ms. Blackman's clothing description] was false except for his reckless disregard for the truth." *Wilson*, 212 F.3d at 787 (internal citation omitted). If Mr. McGriff was the person that Ms. Blackman saw, then her imprecise identification as to the suspect's physical characteristics might call into question the precision of her identification as to his clothing, but it would not make reliance on what she said about clothing reckless. And if Mr. McGriff was not the person that Ms. Blackman saw, but was still a suspect for the receipt of stolen property (if not for burglary), then the fact that her physical description of the suspect did not match Mr. Marks's would be almost entirely irrelevant as to her description of what that suspect was wearing. Again, there is insufficient record evidence from which the Court can conclude that Ms. Blackman's clothing description as relayed in the Affidavit was made "with reckless disregard for the truth."

Regarding challenged statement (3), Marks stated in the Affidavit that he "viewed the surveillance disc of the transaction and confirmed that the description provided by Woolridge's [sic] neighbor Fannie Blackman matched the description of the Home Depot return and also Clyde McGriff Jr." ECF No. 11-8 at 7. It appears that in reality, Blackman's description "matched" Mr. McGriff with respect to the clothing he was wearing and as to his race and gender, but not as to his height, weight, facial hair, and approximate age. Therefore, stating that Ms. Blackman's description "matched" Mr. McGriff constituted a reckless false statement, in addition to embodying a reckless omission, as is further discussed below.

Regarding challenged statement (4), Marks listed in the Affidavit "Date when Affiant received information: 12-06-2009." However, Marks later clarified that the case was initially investigated by other officers, and he received the case on December 8, 2009. *See* ECF No. 12

¶ 7.  Therefore, stating that he received information two days prior constituted a recklessly false statement.

Regarding challenged statement (5), Marks stated in 12/10 Report and in the Affidavit that Melissa DePiero stated that she spoke with Wooldridge regarding the stolen items. Additionally, Marks has produced a written message dated Dec. 8, 2009 that represents that Zach Wooldridge called Marks's office to inform him that he had spoken with DePiero, and provided a number at which she could be contacted. ECF No. 5-3.  The only evidence Mr. McGriff points to contradicting this is the 12/8 Dewberry Report stating that Wooldridge spoke with Lisa Payne, the manager at the Home Depot store in East Liberty, Pennsylvania regarding his stolen items. There is no evidence to suggest, however, that Wooldridge did not *also* speak with Melissa DePiero, who is an "Asset Protection Specialist" for Home Depot, regarding the stolen items. Further, the information available to Marks supported his belief that DePiero had spoken to Wooldridge.  Therefore, Mr. Marks did not make that statement with reckless disregard for the truth.  Still, the Court believes that Marks should have included the contact with Payne in the Affidavit, and considers that inclusion in the "Omissions" section *infra*.

Regarding challenged statement (6), Mr. McGriff argues that Ms. Blackman never provided any clothing description of the suspect.  However, one is plainly contained in the initial Investigative Report of Dec. 6, 2009: "Jacket Brown – Hooded sweat shirt with zipper : : Jeans Blue." ECF No. 11-3.  Mr. McGriff's challenges to this account – that the description does not identify its source, and that it is "computer generated evidence and lacks a foundational showing of substantial similarity in circumstances or words" – are both without merit.  First, at the time of the report it is apparent that the only eyewitness Officer Waltenbaugh spoke with was Ms. Blackman, and nobody had yet viewed the surveillance video.  It is true that the Investigative

Report does not state explicitly that Ms. Blackman provided the clothing description, but there is no plausible way for there to have been any other source, and thus it is properly imputed to her. Moreover, the other descriptors found on the first page of the Investigative Report, the suspect's race, gender, height, weight, and facial hair, are clearly in accordance with the traits described by Ms. Blackman on the second page of the Report, and there is no reason to conclude that the clothing description also was not hers. Secondly, summary judgment motions may be supported by documentary evidence, as long as it is presented in a form that "would be admissible in evidence," Fed. R. Civ. P. 56(c), or in other words, is "*ultimately reducible* to admissible evidence." *Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 2:12-CV-00811, 2013 WL 1342898 (W.D. Pa. Apr. 2, 2013) (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 29 n.6 (3d Cir. 2005)). The Court does not read Plaintiff's assertion that the police report is "computer generated" to even properly raise an objection to its authenticity under Fed. R. Civ. P. 56(c)(2). Therefore, Marks made no false statement with regards to item (6), Ms. Blackman's clothing description. To recap, only statements (3) and (4) constitute misstatements made with reckless disregard for the truth.

### 3. Omissions

As with affirmative false statements, the Court considers whether the original Affidavit contained any omissions made with reckless disregard for the truth. To this end, the Third Circuit in *Wilson* advised that unlike false statements, "omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." 212 F.3d at 788 (internal marks and quotation omitted). Because "[a]ll storytelling involves an element of selectivity[, w]e cannot demand that police officers relate the entire history of events leading up to a warrant

application that would interest a novelist or gossip. . . ." *Id.* at 787. Rather, a court employs the "common sense approach" of only looking to the omissions that are "highly relevant." *Id.* at 788.

Mr. McGriff asserts that Marks omitted the following pieces of information from the Affidavit: (1) that the physical description provided by Blackman did not match Mr. McGriff's characteristics in many aspects; (2) that Wooldridge's original list of stolen items did not include a 36x72 blind that was open; (3) that Wooldridge's list "was substantially different from the items returned by McGriff"; (4) that "[n]o attempt was made to determine the condition of plaintiff's products at the time of the return transaction by contacting the sales associate at The Home Depot who transacted the return of plaintiff's products;" (5) that Marks "made no attempt to advise the [magistrate district judge] which of Wooldridge's items were, in fact, the same as plaintiff's products in terms of make, model, color, item number, quantity and/or value"; and (6) that "[n]either Wooldridge nor Blackman made a positive identification of either plaintiff or his products." ECF No. 1-2 ¶ 28(a)-(e). The Court also considers Plaintiff's accusations of a misstatement regarding Lisa Payne to raise the fact that Marks omitted (7) the fact that Wooldridge also spoke with Lisa Payne, the manager at the East Liberty Home Depot Store, regarding his stolen items.

In the Court's estimation, a reasonable judge would have wanted to know omitted facts (1), (3), and (7) but not omitted facts (2), (4), (5), and (6).

Regarding (1), Officer Waltenbaugh reported that Ms. Blackman described the man she saw as a "black male 5'5" 150lbs in his 30's clean shaven." 12/6 Report, ECF No. 11-3 at 2. At the time of the Affidavit, Marks had evidence that Mr. McGriff was an African-American male, six feet tall, weighing over 200 pounds, in his mid-50's, with facial hair. Ans. ¶ 17, ECF No. 5. As noted above, Ms. Blackman also described the man as wearing a brown hooded sweat shirt

with a zipper and blue jeans. ECF No. 11-3 at 2. However, the Affidavit only said that Ms. Blackman described an "unknown black male with a brown sweater jacket on and blue jeans." ECF No. 11-8 at 7. It later stated that upon viewing the surveillance video of Mr. McGriff at Home Depot, it "matched" "the description provided by Wooldridge's neighbor Fannie Blackman." *Id.* Therefore, Marks omitted both the fact of Ms. Blackman's complete initial description of the suspect and that that description differed from Mr. McGriff in a substantial way.

These facts are very similar to those in *Wilson*, where the detective did not tell the judge that an investigative report (based on eyewitness accounts) stated the suspect was between 6'3" and 6'5", but his driver's abstract indicated that he was 5'11". 212 F.3d at 788. The court held that "[a]ny reasonable person would know that the significant height differential" was "the kind of thing the judge would wish to know." *Id.* (internal marks omitted). As in *Wilson*, the Court has little difficulty concluding here that any reasonable person would know that the significant height, weight, age, and facial hair differential between Ms. Blackman's description and Mr. McGriff's characteristics were the kind of thing a judge would wish to know. The Court concludes that Marks omitted these facts with reckless disregard for the truth.

Regarding omission (2), Marks stated that Wooldridge confirmed that his return matched Home Depot's return "including the 36x72 blind that was open." Plaintiff is correct that this item was not described in Wooldridge's original list of items stolen relayed in the December 6 Report, and that Marks did not relay that fact in the Affidavit. Still, there is record evidence that Wooldridge did tell Marks about the blinds before the filing of the Affidavit, found in the Affidavit, the 12/10 Report, and Mr. Marks's in court testimony at the preliminary hearing. *See* ECF Nos. 11-7; 11-8; 11-22 at 9:10-16. Therefore, Marks properly included the fact that

Wooldridge described to him a certain blind that matched the item returned by Mr. McGriff, and only omitted the fact that that description came from a later discussion with Wooldridge, rather than in Wooldridge's initial report. The Court believes that such information is more akin to the type of "potentially evocative detail" than the "kind of thing the judge would wish to know," and therefore is not of sufficient consequence to constitute an omission made with reckless disregard for the truth. See *Wilson*, 212 F.3d 781 at 787.

Regarding omission (3), the Affidavit stated that DePiero confirmed that Wooldridge's list of missing items was "almost an exact match" of the items returned to Home Depot by Mr. McGriff, and that Wooldridge described it as an "exact list." ECF No. 11-8 at 7. The Affidavit also stated that Wooldridge and Gomez reported that they were missing "home remodeling tools including hand tools and power tools" "along with a few hundred dollars worth of Home Depot remodeling supplies." The Court reads the Affidavit to accurately portray that only the Home Depot remodeling supplies were those returned by McGriff, and not the tools. However, the initial list of stolen items reported by Wooldridge describes 14 different tools that were stolen, and only 3 different types of supplies. ECF No. 11-3 at 2. Adding in the blinds later reported by Wooldridge, the total becomes 4 types. The receipt of McGriff's return shows 19 types of supplies returned, and comparing the receipt to Wooldridge's list and account reveals that three of his four types of stolen supplies do indeed match the receipt. *See* ECF No. 11-19.[4] Additionally, it is worth noting that while the Affidavit only avers that DePiero and Wooldridge *said* to Marks that the items were an "exact list" and an "almost exact match," and not necessarily that they *were* so, it appears to be the clear import of the Affidavit that the items were in fact a near "exact match."

---

[4] The Court's review of the Home Depot return does not reveal any light switches, as reported in the 12/6 Report.

In the Court's view, this is one of those close calls between a misstatement and an omission:[5] whether Marks "misrepresented" that Wooldridge's original list was an "exact match" with DePiero's, or whether he "omitted" the fact that there was at least a partial mismatch, especially because there is record evidence that Wooldridge, Payne, and DePiero personally believed there was a near-exact match. The Court concludes that either way, a judge would want to know that the "fit" between Wooldridge's original list and Mr. McGriff's return, while overlapping in significant areas, could hardly be said to be a near "exact match," at least based on the record evidence the Court has before it.[6] Therefore, whether it is more properly considered a misstatement or an omission, and while it is a close call, the Court concludes that Marks acted with reckless disregard for the truth when he did not include in the Affidavit that a significant number of the items in the McGriff return were not reported missing by Wooldridge.[7] As the Court's Corrected Affidavit below demonstrates, the Court concludes that adding a sentence describing the mismatch between the two lists both cures the material omission and clarifies that Wooldridge's and DePiero's statements regarding the "exactness" of the match are just their own opinions.

---

[5] *See* note 9 *infra*.

[6] While it is perhaps possible that the reason there is not record evidence of the particular items stolen other than the four noted above is that each of the items not listed by Wooldridge, but returned by McGriff, were less than $2 in value. It is highly likely that in his list of approximately $2900 worth of stolen items, the fact that these were left out, if they were indeed stolen from Wooldridge, is not particularly striking.

[7] Marks includes as an exhibit to his motion a purported email from Wooldridge to himself dated December 18, 2009, in which Wooldridge provided a more complete list of items that were stolen from him, and which appears to be a far closer match to the McGriff Return. *See* ECF NO. 11-13. First, the Court would note that this email is of little relevance to the probable cause inquiry, which only examines the facts as known to Marks at the time he provided the Affidavit, December 10, 2009. *See Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) ("Probable cause to arrest exists when the information within the arresting officer's knowledge *at the time of the arrest* is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested.") (emphasis added). Second, Plaintiff, in his Responsive Concise Statement of Material Facts, objected to this email on the grounds that is has not been authenticated. ECF No. 26 ¶ 16. The Court agrees that Marks has not by way of affidavit or testimony responded to this objection, nor even made a *prima facie* showing that the email is what it purports to be. The Court believes that this objection is well-founded under Fed. R. Civ. P. 56(c), and that therefore it is precluded from considering the email as evidence of what was stolen from Wooldridge.

What omitted facts (4), (5), and (6), all have in common is that they pertain to steps that Marks did *not* take in investigating the crime. Again, the standard to be applied is that omissions must be made with "reckless disregard for the truth." *Wilson*, 212 F.3d at 787. In affidavits, as in other types of storytelling, the fact that a piece of information is omitted often means that it did not occur. If you asked me what I did today, and I told you I went to a movie, it is not a material omission that I failed to tell you all the things I did not do today, such as not go the zoo, not walk the dog, or not take a bike ride. "In other words, a person's default position is to doubt that a proposition is true until there are grounds to believe it." *United States v. Brown*, 631 F.3d 638, 648 (3d Cir. 2011). Moreover, "in general, the failure to investigate fully is not evidence of an affiant's reckless disregard for the truth." *United States v. Dale*, 991 F.2d 819, 844 (D.C. Cir. 1993). Here, the fact that Marks did not include in the Affidavit the steps he did *not* take in his investigation, nor information that was *not* provided by witnesses,[8] does not demonstrate a "reckless disregard for the truth," because the default presumption regarding these events was that they did not occur.[9] *See Badillo v. Stopko*, 12-2768, 2013 WL 1324597, at *4 (3d Cir. Apr. 3, 2013) (rejecting the idea that "an affidavit must include all examples of possible investigatory

---

[8] This conclusion is not at odds with the court's determination in *Wilson* that the defendant officer recklessly omitted the fact that an eyewitness did not pick the plaintiff out of a photo array. *See* 212 F.3d at 788. In that case, the police had provided the two eyewitnesses with a photographic lineup, out of which one was able to pick out the plaintiff, but the other could not. *Id.* at 785. Here, in contrast, neither Blackman nor Wooldridge was ever asked to pick the suspect out of a photographic or in-person lineup (and of course of them, only Blackman would have possibly been able to do so as the only eyewitness), and therefore it can hardly be said to be a reckless omission that there was no positive identification, given that there was no lineup to begin with.

[9] The Court believes that this analysis is consistent with the spirit of the "common sense approach" adopted by the Third Circuit regarding what a judge would ordinarily wish to know. *Wilson*, 212 F.3d 781, 787. Of course, it might sometimes be true that omitting from a report an event that did not occur would be misleading as to the truth, if that event is nearly always expected to occur under the circumstances. For example, if I said that I paid for a very expensive dinner at a restaurant, but I don't know why the waiter began cursing me as I left, it might be misleading that I left out that I did not leave any tip. But in general, this is the exception rather than the rule, and in this case, the rule is applicable. Additionally, it might also be true that sometimes discerning between an "act" and a "failure to act" can be a difficult (and sometimes hollow) task, but again, this is not that case. *See United States v. Duran*, 596 F.3d 1283, 1293 (11th Cir. 2010) ("While in some areas the distinction between nonfeasance and misfeasance may not be clear, this is not an issue for this case.").

tactics that were either unsuccessful or not used," reasoning that "a magistrate is likely to expect that all significant evidence would be included in an affidavit").

Regarding omitted fact (7), the 12/8 Dewberry Report stated "Wooldridge states Lisa Payne who is the manager at Home Depot in East Liberty, informed him a black male entered the location during the time frame of his burglary, with all the items victim listed stolen from residence." ECF No. 11-5. The Affidavit only mentions Wooldridge's conversations with Ms. DePiero, the Asset Protection Specialist at Home Depot. The Court concludes that a reasonable person would know that a judge would wish to know that the victim had spoken with not one, but two representatives of Home Depot who asserted that his items were those returned to their store, and that therefore this fact was omitted with reckless disregard for the truth.[10] To recap, Defendant Marks recklessly omitted facts (1), (3), and (7).[11]

### 4. Corrected Affidavit

Having determined the misstatements and omissions to be considered as recklessly made, the next step is for the Court to formulate a "Corrected Affidavit" to be used in the probable cause determination that excises the reckless misstatements and inserts the reckless omissions. The Court's Corrected Affidavit is identical to the first, with the following alterations:

- *Replace* Date when Affiant received information: "12-06-2009" *with* "12-08-2009."

---

[10] As will be seen later, this fact cuts against McGriff, not for him.

[11] Defendant makes passing reference in his Brief in Support to the fact that Marks considered Plaintiff's truck to be inculpatory evidence. See ECF No. 11 at 6. However, there is no record evidence of this fact. According to Ms. Blackman, and as relayed in the Affidavit, the burglar placed the stolen items in a white pickup truck. It appears from the record evidence that the vehicle matched to Mr. McGriff's registration record is a Ford pickup truck, but there is no evidence as to the color of this truck. *See* ECF Nos. 11-20; 25-5 ¶ 12; 29 ¶ 25. Moreover, the Court does not have before it record evidence to conclude that Marks was aware of this fact at the time he completed the Affidavit. Therefore, while there is no evidence that Marks made any material omissions with regard to the truck, similarly, Marks is not permitted to rely on it at this juncture to bolster the case for probable cause.

- *Insert* "Blackman described the unknown black male as being 5'5" in height, weighing 150 lbs, in his 30's, and clean shaven. Mr. McGriff is an African-American male, six feet tall, weighing over 200 pounds, in his mid-50's, with facial hair."

- *Insert* "Wooldridge reported approximately three (3) types of missing items that matched with respect to item and quantity Mr. McGriff's return of nineteen (19) types of items, and one (1) that did not."

- *Insert* "Wooldridge also spoke with Lisa Payne, the manager at Home Depot in East Liberty, who informed him that a black male entered the store during the time frame of his burglary, with the items listed stolen from his residence."

- *Replace* "Detective Grill and I then viewed the surveillance disc of the transaction and confirmed that the description provided by Wooldridge's neighbor Fannie Blackman matched the description of the Home Depot return and also Clyde McGriff Jr." *with* "Detective Grill and I then viewed the surveillance disc of the transaction and confirmed that the video matched the description of the Home Depot return and also Clyde McGriff Jr. The description provided by Wooldridge's neighbor Fannie Blackman matched Mr. McGriff with respect to his clothing, but not with respect to his height, weight, approximate age, and facial hair."

### 5. Materiality

The Court's next task is to consider whether the identified misstatements or omissions were "material, or necessary, to the probable cause determination," that is, after conducting the appropriate reconstructive surgery to the Affidavit, to determine "whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789. To do so, the Court "engage[s] in the routine probable cause analysis, weighing the inculpatory evidence against any

exculpatory evidence available to the officer." *Id.* at 791. In conducting this weighing, the Court must return to the ordinary summary judgment standard, and consider the Corrected Affidavit as "simply . . . one more set of factual assertions that must then be viewed in the light most favorable to the non-movant." *Reedy*, 615 F.3d at 214 n.24.

The strongest inculpatory evidence is the temporal proximity of the crime to Mr. McGriff's return of the goods. The fact that the crime occurred around 11:30 a.m. and at least some of the same items were returned to Home Depot at 1:30 p.m. on the same day, just two hours later, makes it more probable that they were the same stolen items. Additionally strongly inculpatory is the match between the Wooldridge list and account and Mr. McGriff's returned items – namely, the 36x72 opened window blinds,[12] the boxes of electrical outlets, and the assorted fuses and circuit breakers. (In particular, the initial Wooldridge list listed 10 assorted fuses and circuit breakers, and the McGriff receipt shows 8 circuit breakers). Considered along with this evidence are the strongly inculpatory representations of Wooldridge, DePiero, and Payne (via Wooldridge), who each concluded that there was a nearly exact match of the items taken from Wooldridge and those returned by Mr. McGriff. In other words, the fact that four people (including Marks) independently believed that there was a substantial match of the items, rather than only Marks himself, makes it much more likely that there was in fact a match. Additionally, even viewed in the light most favorable to Mr. McGriff, Ms. Blackman's description is at least generally inculpatory: it matched Mr. McGriff with regards to his race, gender, and clothing.

Most exculpatory to Mr. McGriff is the mismatch between his precise characteristics and Ms. Blackman's description: there is a significant differential from her description of his height,

---

[12] This somewhat more uncommon item – an opened box of window blinds of a specific size – carries with it a heightened level of "match."

weight, age, and facial hair, which seriously diminishes the likelihood that Mr. McGriff was present at the crime scene. Also, viewed in the light most favorable to Mr. McGriff, it is generally exculpatory that at least with regards to the written reports of the items Wooldridge reported missing, there are a great many items returned by Mr. McGriff that were not listed by Wooldridge. Considered in the light most favorable to Mr. McGriff, it is slightly exculpatory that Marks received the case on December 8 rather than December 6 – it suggests that he might have less overall knowledge of the events at issue if he was handed the case midway through the investigation, rather than living with it from its inception.

It is neither inculpatory nor exculpatory in and of itself that neither Wooldridge nor Gomez stated that they knew Mr. McGriff. Still, the fact that they did not know him helps to make out a necessary element of both the crimes of burglary and receipt of stolen property: *if* Mr. McGriff took or received the stolen property, he did so without the owners' permission.

Of course, facts are only inculpatory or exculpatory with regard to the particular crime charged. Here, Mr. McGriff was charged with two crimes: burglary and receipt of stolen property.[13] For Mr. McGriff to have been the burglar, he must have been the one who entered Wooldridge's house and the one whom Ms. Blackman saw. Therefore, her description of the man she saw matched Mr. McGriff a bit (African American male with brown hooded sweatshirt

---

[13] Those crimes are defined as follows:
  Receiving Stolen Property:
  (a) Offense defined.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
  (b) Definition**.**--As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.
18 Pa. Cons. Stat. § 3925.
  Burglary:
  (a) Offense defined.--A person commits the offense of burglary if, with the intent to commit a crime therein, the person: . . .
   (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present. . . .
18 Pa. Cons. Stat. § 3502.

and jeans), but was very dissimilar to him in height (5'5" vs. over 6'), weight (150 lbs vs. over 200 lbs), age (30's vs. 51), and facial hair (clean shaven vs. with facial hair). Without this identification placing Mr. McGriff at the scene of the crime, the burglary case against him is very thin. Weighing this highly exculpatory fact even against the inculpatory facts in the Constructed Affidavit, the Court concludes that a reasonable jury could well find that the facts and circumstances within Marks's knowledge at the time he completed the Affidavit were not sufficient for a prudent police officer to believe that Mr. McGriff committed a burglary. In other words, a jury *could* (but would not be compelled to) find that it was unreasonable for Marks to have believed there was a "fair probability" that Mr. McGriff had committed a burglary. Therefore, with regards to the burglary charge, Marks's reckless misrepresentations and omissions were "material," that is, they would have made a difference in the outcome of the probable cause analysis.[14]

However, the same cannot be said for the receipt of stolen property charge. For this charge to stick, Mr. McGriff need not have been the person who took the goods from Wooldridge's house and whom Blackman saw – he need only be the person who received those goods and tried to pawn them off at Home Depot. Therefore, with respect to this crime, the mismatch in Ms. Blackman's description is far less relevant, if relevant at all – while overall, the fact that Mr. McGriff was not at the scene of the burglary overall might make it slightly less likely that he had anything to do with stolen property, it is by no means an element of the crime of receipt of stolen property that the defendant look like the person from whom he received the

---

[14] As previously noted, because the Court must evaluate the facts and circumstances known to the officer at the time he filled out an Affidavit of Probable Cause or made an arrest, it is not permitted to consider the facts as they later came to be discovered. *See Paff*, 204 F.3d at 436. For that reason, while the confiscation of a variety of tools (matching those taken from the worksite) from Mr. McGriff's truck on December 15, 2009 might otherwise be highly relevant as to whether he actually committed all of the crimes charged (as would be the striking fit between Wooldridge's alleged list provided December 18 and the Home Depot return), they are irrelevant as to whether there was probable cause to arrest Mr. McGriff *at the time of the arrest* on December 10, which is the only proper inquiry before the Court.

stolen property. Given the highly inculpatory facts of the matching of the items stolen and the items returned by Mr. McGriff, as confirmed by Wooldridge, Payne, and DePiero, the extraordinarily close temporal proximity between the two events, and the driver's license and video surveillance evidence that identified Mr. McGriff as the one who returned the goods, based on the facts in the Corrected Affidavit, and viewed in the light most favorable to Mr. McGriff, a reasonable jury could not find that a reasonably prudent police officer would not have concluded that there was a "fair probability" that Mr. McGriff received stolen property. Therefore, with respect to the crime for the receipt of stolen property, the reckless misstatements and omissions committed by Mr. Marks were not material, and cannot form the basis of a § 1983 claim for false arrest or malicious prosecution made pursuant to a warrant.

As explained above, the fact that there was probable cause as to one of the crimes charged (receipt of stolen property) destroys a § 1983 claim as to the other (burglary), both with respect to false arrest, *see Johnson*, 477 F.3d at 82, and malicious prosecution, *see Posey*, 2013 WL 989953, at *9. Because no constitutional right of Mr. McGriff's was violated, the Court need not inquire whether Marks's actions are protected by qualified immunity. *See Wilson*, 212 F.3d at 792. Summary judgment in favor of Defendant Marks on Plaintiff's § 1983 claims at Counts I and II is granted.

### IV.    STATE LAW CLAIMS

Additionally, Plaintiff asserts in Counts III, IV, and V state law claims of False Arrest/False Imprisonment and Malicious Prosecution, as well as "Outrageous Conduct," respectively. *See* Compl. ¶¶ 50-56. Defendant asks this Court to enter judgment in its favor on these counts as well, assumedly after exercising supplemental jurisdiction over them. A "district court[] may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed

all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court has already dismissed the claims over which it has original jurisdiction, namely Plaintiff's § 1983 claims at Counts I and II. Pursuant to § 1367 it declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Because this case was removed to federal court pursuant to 28 U.S.C. § 1441, a remand to state court is appropriate. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637 (2009); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

## V.    CONCLUSION

Defendant Marks's Motion for Summary Judgment is granted with regards to Counts I and II. The Court declines to exercise supplemental jurisdiction over Counts III, IV, and V, and those claims are remanded forthwith to Court of Common Pleas of Allegheny County, Pennsylvania.

An appropriate order will issue.


_____/s/ Mark R. Hornak_____
Mark R. Hornak
United States District Judge

Dated:  April  _30_ , 2013

cc:     All counsel of record
        Mr. Clyde McGriff, *pro se*